Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL V

| | | |
|---|---|---|
| MIGDALIA RIVERA LÓPEZ, y otros<br><br>Apelados<br><br>v.<br><br>MUNICIPIO AUTÓNOMO DE SAN JUAN; ESTADO LIBRE ASOCIADO DE PUERTO RICO; DEPARTAMENTO DE TRANSPORTACIÓN Y OBRAS PÚBLICAS; AUTORIDAD DE ENERGÍA ELÉCTRICA; AUTORIDAD DE CARRETERAS  y TRANSPORTACIÓN DE PUERTO RICO; AUTORIDAD DE ACUEDUCTOS Y ALCANTARILLADOS; ÓPTIMA SEGUROS por sí y/o como sucesora de QBE SEGUROS; MAPFRE PRAICO INSURANCE COMPANY; FULANOS DE TAL 1 al 10; Compañía de Seguros A; Compañía de Seguros B; Compañía de Seguros C<br><br>Apelantes | KLAN202200636<br><br><br>consolidado<br><br><br>KLAN202200729 | *CERTIORARI*<br>Procedente del Tribunal de Primera Instancia, Sala Superior de San Juan (805)<br><br>Civil Núm.: SJ2020CV03308<br><br>Sobre: Daños y Perjuicios<br><br>*CERTIORARI*<br>Procedente del Tribunal de Primera Instancia, Sala Superior de San Juan (805)<br><br>Civil Núm.: SJ2020CV03308<br><br>Sobre: Daños y Perjuicios |
| MIGDALIA RIVERA LÓPEZ, y otros<br><br>Apelantes<br><br>v.<br><br>MUNICIPIO AUTÓNOMO DE SAN JUAN; ESTADO LIBRE ASOCIADO DE PUERTO RICO; DEPARTAMENTO DE TRANSPORTACIÓN Y OBRAS PÚBLICAS; AUTORIDAD DE ENERGÍA ELÉCTRICA; AUTORIDAD DE CARRETERAS  y | | |

Número Identificador

SEN(RES)2022_____

| TRANSPORTACIÓN DE PUERTO RICO; AUTORIDAD DE ACUEDUCTOS Y ALCANTARILLADOS; ÓPTIMA SEGUROS por sí y/o como sucesora de QBE SEGUROS; MAPFRE PRAICO INSURANCE COMPANY; FULANOS DE TAL 1 al 10; Compañía de Seguros A; Compañía de Seguros B; Compañía de Seguros C  Apelados | | |
|---|---|---|

Panel integrado por su presidente, el Juez Hernández Sánchez, la Jueza Santiago Calderón y la Jueza Álvarez Esnard.

Álvarez Esnard, jueza ponente

## SENTENCIA

En San Juan, Puerto Rico, a 27 de abril de 2023.

Comparece ante nos el Municipio Autónomo de San Juan ("Municipio de San Juan") y Óptima Seguros ("Óptima") mediante *Apelación Civil* en el caso KLAN202200636, presentado el 12 de agosto de 2022. Nos solicita que revoquemos la *Sentencia Parcial* emitida el 28 de junio de 2022 y notificada el 29 de junio del mismo año por el Tribunal de Primera Instancia, Sala Superior de San Juan ("foro primario" o "foro *a quo*"). En el aludido dictamen, el foro *a quo* determinó paralizar el pleito en cuanto a la parte codemandada, Estado Libre Asociado de Puerto Rico ("ELA"), fundamentándose en un *injunction* ordenado por el Tribunal Federal de Distrito de Puerto Rico.

Asimismo, comparece la señora Migdalia Rivera López ("señora Rivera López") mediante *Apelación* en el caso con la designación alfanuméricamente de KLAN202200729, presentado el 13 de septiembre de 2022. Igualmente, nos solicita que dejemos

sin efecto la *Sentencia Parcial* emitida el 28 de junio de 2022, notificada al día siguiente.

Por los fundamentos que expondremos a continuación, en el caso **KLAN202200636**, *modificamos* la sentencia apelada, y así modificada, confirmamos. En cuanto al caso **KLAN202200729**, *confirmamos* el dictamen apelado.[2]

## I.

Los hechos que originan esta controversia surgen el 23 de junio de 2020 cuando la señora Rivera López y Luis Colón Larrauri (en conjunto, "los señores Rivera-Colón") incoaron una *Demanda* por daños y perjuicios ante el foro primario.[1] En la aludida reclamación, los señores Rivera-Colón alegaron que el 24 de junio de 2019, en la acera del lado norte del puente Dos Hermanos en dirección de Condado a San Juan, la señora Rivera López pisó un hueco de un registro de lo que se alega ser la luminaria de la acera que se encontraba destapada y llena de arena. Esto provocó que se cayera al suelo y como consecuencia de esta caída, expresó haber sufrido daños físicos y angustias mentales que se estiman en una suma mayor de doscientos cincuenta mil dólares ($250,000.00). Esta causa de acción se presentó en contra de una serie de demandados, entre los cuales se destacan el Municipio de San Juan, Óptima y el ELA.[2]

Tras varios años de litigio, el 12 de abril de 2022, el ELA presentó un escrito de *Aviso de Injunction Paralizando la Litigación del Presente Caso y Sobre el Requisito de Presentar una*

---

[1] Véase el Apéndice III, pág. 5-11 del recurso del Municipio de San Juan y Óptima en el caso KLAN 2022-00729.

[2] Los demandados que figuraban en la demanda son: Municipio Autónomo de San Juan; Estado Libre Asociado de Puerto Rico; Departamento de Transportación y Obras Públicas; Autoridad de Energía Eléctrica; Autoridad de Carreteras y Transportación de Puerto Rico; Autoridad de Acueductos y Alcantarillados; Optima Seguros por sí y/o como sucesora de QBE Seguros; MAPFRE PRAICO Insurance Company; Fulanos de Tal 1 al 10; Compañía de Seguros A; Compañía de Seguros B; Compañía de Seguros C.

*Solicitud de Gastos Administrativos ante el Tribunal del Título III.*[3] Mediante este documento, el ELA notificó la existencia de un *injunction* permanente sobre las reclamaciones presentadas en su contra previo al 15 de marzo de 2022, fecha en la que entró en vigor el Plan de Ajuste de la Deuda aprobado por virtud del *Confirmation Order* dictado el 18 de enero de 2022 por la jueza del Tribunal de Distrito Federal, Hon. Laura Taylor Swain. Además, adujo que el foro *a quo* perdió jurisdicción sobre el presente caso ya que el mismo se encontraba paralizado de manera permanente y que el único remedio al cual los señores Rivera-Colón tenían derecho era a una reclamación de gastos administrativos.[4]

De manera oportuna, los señores Rivera-Colón se opusieron a la solicitud del ELA mediante un escrito intitulado *Oposición a Aviso de Injunction Paralizando la Litigación del Presente Caso y Sobre el Requisito de Presentar una Solicitud de Gastos Administrativos ante el Tribunal de Título III*, el cual fue presentado el 19 de mayo de 2022.[5] En esencia, esbozaron que la paralización a la que hace alusión el ELA no es aplicable al caso de autos debido a que los eventos que motivaron la reclamación presentada por los señores Rivera-Colón se originó en una fecha posterior a la radicación de la quiebra del Gobierno de Puerto Rico.

De otra parte, el 31 de mayo de 2022, el ELA presentó una *Réplica a Moción de Oposición al Aviso de Injunction Paralizando la Litigación del Presente Caso y Sobre el Requisito de Presentar*

---

[3] Véase el Apéndice V, págs. 73- 80 del recurso del Municipio de San Juan y Óptima en el   KLAN 2022-00729.
[4] Íd., pág. 75-77.
[5] Véase el Apéndice VI, págs. 85-92 del recurso del Municipio de San Juan y Óptima en el caso KLAN 2022-00729.

*una Solicitud de Gastos Administrativos ante el Tribunal de Título III.*[6] En síntesis, reiteró su postura referente a que el foro primario había perdido jurisdicción en este pleito y que el único remedio disponible para los señores Rivera-Colón es una reclamación de gastos administrativos.

Por su parte, el 21 de junio de 2022, el Municipio de San Juan y Óptima presentaron una *Moción Sobre Posición en Torno a Aviso de Injunction Paralizando la Litigación del Presente Caso y Sobre el Requisito de Presentar una Solicitud de Gastos Administrativos ante el Tribunal de Título III.*[7] Mediante este recurso, adujeron que no existe fundamento legal para determinar que el foro primario carecía de jurisdicción. Igualmente, argumentaron que el ELA era parte indispensable en esta controversia y si ellos no participaban en el pleito, entonces habría que desestimarlo por falta de jurisdicción. Este último alegato obedece a la controversia relacionada a quien ostenta la jurisdicción sobre la acera del puente Dos Hermanos, lugar donde los señores Rivera-Colón alegaron ocurrieron los hechos objeto de la reclamación en el presente caso.

En respuesta a esta última moción, el 23 de junio de 2022, el ELA presentó una R*éplica a Moción Sobre Posición en Torno a Aviso de Injunction Paralizando la Litigación del Presente Caso y Sobre el Requisito de Presentar una Solicitud de Gastos Administrativos ante el Tribunal de Título III.*[8] En esta ocasión, el ELA explicó que la controversia jurisdiccional se trata de un asunto de campo ocupado bajo la cláusula de supremacía de la

---

[6] Véase el Apéndice VII, págs. 93-103 del recurso del Municipio de San Juan y Óptima en el caso KLAN 2022-00729.
[7] Véase el Apéndice VIII, págs. 104-109 del recurso del Municipio de San Juan y Óptima en el caso KLAN 2022-00729.
[8] Véase el Apéndice IX, págs. 110-115 del recurso del Municipio de San Juan y Óptima en el caso KLAN 2022-00729.

Constitución de Estados Unidos. El ELA sostuvo que el foro primario se encontraba privado de jurisdicción para adjudicar la controversia ya que les es aplicable la paralización al amparo del *Confirmation Order* emitido por el tribunal federal y al cual hicieron alusión en su moción original sobre el asunto de la paralización.

Sometida las posturas de las partes, el Tribunal de Primera Instancia dictó *Sentencia Parcial* el 28 de junio de 2022, declarando *Ha Lugar* la solicitud de paralización de los procedimientos en cuanto al ELA.[9]

En desacuerdo con el dictamen del foro primario, el Municipio de San Juan y Óptima presentaron *Moción de Reconsideración* el 14 de julio de 2022. Alegaron que la paralización de los procedimientos debió aplicarse a todas las partes y no solo al ELA. Este razonamiento responde al argumento de que el ELA es parte indispensable en este litigio, debido a que persiste una controversia relacionada a quien tenía la jurisdicción del puente Dos Hermanos. Una vez sometida la *Moción de Reconsideración*,[10] esta fue declarada *No ha Lugar* mediante *Orden* emitida el 15 de julio de 2022.[11]

Inconforme aún, el Municipio de San Juan y Óptima acudieron ante esta Curia en su recurso de *Apelación Civil*, el 12 de agosto de 2022 (KLAN202200636) y formularon el siguiente señalamiento de error:

> Erró el TPI al declarar *No ha Lugar* la *Moción de Reconsideración* y, en su consecuencia, negarse a enmendar la Sentencia Parcial a los fines de decretar la paralización automática a favor de todas las partes en el pleito, y no solo en cuanto al ELA, ya que el ELA

---

[9] Véase el Apéndice I, págs. 1-4 del recurso del Municipio de San Juan y Óptima en el caso KLAN 2022-00729.

[10] Véase el Apéndice X, págs. 116-123 del recurso del Municipio de San Juan y Óptima en el  KLAN 2022-00729.

[11] Véase el Apéndice Xi, pág. 124 del recurso del Municipio de San Juan y Óptima en el caso KLAN 2022-00729.

es parte indispensable lo que implicaría que la celebración del juicio en su ausencia ocasionaría a las codemandadas/apelantes un perjuicio sustancial indebido al privarle de oportunidad real y efectiva de defenderse adecuadamente de las alegaciones en su contra, además de conducir a una sentencia nula.

Por su parte, el 13 de septiembre de 2022, los señores Rivera-Colón comparecieron ante nos mediante *Apelación* señalando el siguiente error (KLAN202200729):

Erró el TPI al paralizar el caso en contra del ELA al declarar *Ha Lugar* la Solicitud de Aviso de Injunction Paralizando la Litigación del Presente Caso y Sobre el Requisito de Presentar una Solicitud de Gastos Administrativos ante el Tribunal del Título III.

Tras varios eventos procesales los cuales no son necesarios detallar, el 16 de septiembre de 2022, ordenamos consolidar los recursos tanto de los señores Rivera-Colón como el de Municipio de San Juan y Óptima a tenor con los dispuesto por la Regla 80.1 del Reglamento del Tribunal de Apelaciones, 4LPRA Ap. XXII-B, R. 80.1. Así las cosas, el 7 de noviembre de 2022, compareció el ELA por conducto de la Oficina del Procurador General con su *Alegato del Gobierno de Puerto Rico.* Con el beneficio de ambas partes, nos corresponde examinar la normativa aplicable en este caso.

## II.
### A. *Falta de Parte Indispensable*

Se considera parte indispensable aquella que tenga "un interés común sin cuya presencia no pueda adjudicarse la controversia . . .". 32 LPRA Ap. V, R. 16.1. Esta es una parte "cuyo interés en la cuestión es de tal magnitud, que no puede dictarse un decreto . . . sin lesionar y afectar radicalmente sus derechos". *García Colón et al. v. Sucn. González,* 178 DPR 527, 548 (2010) (Citas omitidas). Por virtud de ello, "si no está presente en el litigio se trasgrede el debido proceso de ley del ausente. Ante la

ausencia de una parte indispensable, el tribunal carece de jurisdicción . . .". *Rivera Marrero v. Santiago Martínez*, 203 DPR 462, 479 (2019). Por lo tanto:

> [C]onstituye un planteamiento tan relevante y vital que puede presentarse en cualquier momento, es decir, se puede presentar por primera vez en apelación e, incluso, un tribunal apelativo puede suscitarlo sua sponte, ya que en ausencia de parte indispensable, el tribunal carece de jurisdicción. Además, la omisión de traer a una parte indispensable al pleito constituye una violación al debido proceso de ley que la cobija. *Romero v. SLG Reyes*, 164 DPR 721, 733 (2005). (Citas omitidas).

Esto quiere decir que "la sentencia que se emita en ausencia de parte indispensable es nula". *García Colón et al. v. Sucn. González, supra*, pág. 550 (Énfasis suprimido). Cuando esté "ausente una parte indispensable, debe desestimarse la acción. Sin embargo, dicha desestimación no tendrá el efecto de una adjudicación en los méritos ni, por ende, de cosa juzgada". *Pérez Rosa v. Morales Rosado*, 172 DPR 216, 224 (2007).

### B. La Ley PROMESA y el Plan de Ajuste de la deuda

El 30 de junio de 2016 se aprobó la Ley Pública 114-187 intitulada *Puerto Rico Oversight, Management, Economic Stability Act* (PROMESA). Por virtud de este estatuto federal se estableció la Junta de Supervisión y Administración Financiera (Junta), a la cual se le otorgó una serie de poderes y responsabilidades relacionados con el manejo fiscal y presupuestario del Gobierno de Puerto Rico. Así, el 3 de mayo de 2017, la Junta presentó una petición de quiebra a nombre del Gobierno de Puerto Rico al amparo del Título III de la Ley PROMESA, 48 USC sec. 2101 *et seq.* En lo pertinente, la Sección 301 (a) del Título III de PROMESA incorporó las secciones 362 y 922 del Código Federal de Quiebras en torno a las paralizaciones automáticas de pleito en contra del

deudor y su propiedad. *Lacourt Martínez, et al v. Jta. Lib. et al,* 198 DPR 786, 787 (2017). Esto tuvo el efecto de implementar una paralización automática de las reclamaciones instadas contra el ELA, previo a la presentación de la petición de quiebra. *Requena Mercado v. Policía de Puerto Rico,* 205 DPR 285, 291 (2020).

El objetivo principal de la paralización automática de pleitos es liberar al deudor de presiones financieras mientras se dilucida el procedimiento de quiebra. *Lacourt Martínez v. Jta. Lib. et al, supra,* pág. 788. A la luz de lo esbozado, mediante la paralización, "se impide, entre otras cosas, el comienzo o la continuación de cualquier proceso judicial, administrativo o de otra índole, que fue o pudo haber sido interpuesto en contra del deudor, o para ejercitar cualquier acción cuyo derecho nació antes de que se iniciara la quiebra". *Peerless Oil v. Hnos. Torres Pérez,* 186 DPR 239, 255 (2012) (énfasis y citas omitidas). Empero, la presentación de una petición de quiebra solo paraliza los procedimientos contra el deudor que la presentó. *Íd.,* pág. 243. De tal manera, la responsabilidad de una persona que es codeudor, fiador o en alguna forma garantizador de un quebrado no se altera por la adjudicación en quiebra de éste. *Íd.,* pág. 256 citando a *Cámara Insular Etc. v. Anadón,* 83 DPR 374, 380 (1961).

Ahora bien, el 18 de enero de 2022, la Corte de Distrito de Estados Unidos para el Distrito de Puerto Rico emitió el *Order and Judgment Confirming Modified Eighth Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, the Employees Retirement System of the Government of the Commonwealth of Puerto Rico, and the Puerto Rico Public Buildings Authority* ("*Confirmation Order*"). Por virtud de este, se confirmó el *Modified Eighth Amended Title III Joint Plan Of Adjustment Of The*

*Commonwealth Of Puerto Rico*, mejor conocido como el Plan de Ajuste de la Deuda y **se determinó que el 15 de marzo de 2022 sería la fecha de efectividad** ("*effective date*"). El *Confirmation Order* tuvo varias consecuencias jurídicas importantes en torno al proceso de quiebras del Gobierno de Puerto Rico. En lo pertinente, el inciso cincuenta y nueve (59) ordena un *injunction* sobre las reclamaciones instadas en las siguientes circunstancias:

59. Injunction on Claims.

Except as otherwise expressly provided in section 92.11 of the Plan, this Confirmation Order, or such other Final Order of the Title III Court that is applicable**, all Entities who have held, hold, or in the future hold Claims or any other debt or liability that is discharged or released pursuant to section 92.2 of the Plan or who have held, hold, or in the future hold Claims or any other debt or liability discharged or released pursuant to section 92.2 of the Plan are permanently enjoined, from and after the Effective Date, from (a) commencing or continuing, directly or indirectly, in any manner, any action or other proceeding (including, without limitation, any judicial, arbitral, administrative, or other proceeding) of any kind on any such Claim** or other debt or liability discharged pursuant to the Plan against any of the Released Parties or any of their respective assets or property, (b) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree, or order against any of the Released Parties or any of their respective assets or property on account of any Claim or other debt or liability discharged pursuant to the Plan, (c) creating, perfecting, or enforcing any encumbrance of any kind against any of the Released Parties or any of their respective assets or property on account of any Claim or other debt or liability discharged pursuant to the Plan, and (d) except to the extent provided, permitted or preserved by sections 553, 555, 556, 559, or 560 of the Bankruptcy Code or pursuant to the common law right of recoupment, asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from any Of the Released Parties or any of their respective assets or property, with respect to any such Claim or other debt or liability discharged pursuant to the Plan. Such injunction shall extend to all successors and assigns of the Released Parties and their respective assets and property. Notwithstanding the foregoing, without prejudice to the exculpation

rights set forth in section 92.7 of the Plan and decretal paragraph 61 hereof, nothing contained in the Plan or this Confirmation Order is intended, nor shall it be construed, to be a non-consensual third-party release of the PSA Creditors, AFSCME, and of their respective Related Persons by Creditors of the Debtors. (Énfasis suplido).

Por otro lado, la Sección 92.2 del Plan de Ajuste al que hace alusión la precitada disposición estipula el mecanismo de descarga y relevo de acciones. La aludida sección lee como sigue:

92.2 Discharge and Release of Claims and Causes of Action:

a) Except as expressly provided in the Plan or the Confirmation Order, **all distributions and rights afforded under the Plan shall be, and shall be deemed to be, in exchange for, and in complete satisfaction, settlement, discharge and release of, all Claims or Causes of Action against the Debtors and Reorganized Debtors that arose, in whole or in part, prior to the Effective Date, relating to the Title III Cases,** the Debtors or Reorganized Debtors or any of their respective Assets, property, or interests of any nature whatsoever, including any interest accrued on such Claims from and after the Petition Date, and regardless of whether any property will have been distributed or retained pursuant to the Plan on account of such Claims or Causes of Action; provided, however, that, without prejudice to the exculpation rights set forth in Section 92.7 hereof, nothing contained in the Plan or the Confirmation Order is intended, nor shall it be construed, to be a grant of a non-consensual third-party release of the PSA Creditors, AFSCME, and of their respective Related Persons by Creditors of the Debtors. **Upon the Effective Date, the Debtors and Reorganized Debtors shall be deemed discharged and released from any and all Claims, Causes of Action and any other debts that arose, in whole or in part, prior to the Effective Date (including prior to the Petition Date)**, and Claims of the kind specified in sections 502(g), 502(h) or 502(i) of the Bankruptcy Code and PROMESA Section 407, whether or not (a) a proof of claim based upon such Claim is filed or deemed filed under section 501 of the Bankruptcy Code, (b) such Claim is allowed under section 502 of the Bankruptcy Code and PROMESA Section 407 (or is otherwise resolved), or (c) the holder of a Claim based upon such debt voted to accept the Plan. For the avoidance of doubt, nothing contained herein or in the Confirmation Order shall release, discharge or enjoin any claims or causes of action against PREPA arising from or related to PREPA-issued bonds, including, without limitation, Monoline-issued insurance pertaining thereto, and PREPA is not

releasing any claims or causes of action against any non- Debtor Entity. Claims and causes of action against PREPA arising from or related to PREPA issued bonds, and releases against PREPA and its assets shall be addressed in PREPA's Title III case, including, without limitation, any plan of adjustment therein. (Énfasis Suplido)

Las disposiciones previamente esbozadas, tienen el efecto de **descargar todos los reclamos, causas de acción y cualquier deuda que tuvieran los deudores.** Indiscutiblemente, dista de la paralización automática de pleitos dispuesto en el Título III de PROMESA, la cual establecía como objetivo "preservar el caudal del deudor para que se pueda llevar un proceso ordenado". *Vera González v. ELA*, 199 DPR 995, 997 (2018) (Martínez Torres, opinión de conformidad). Sin embargo, cuando nos referimos al descargue de las obligaciones, se trata del "fin último del proceso de quiebras y ocurre al final de este." Íd. pág. 999.

Entre otras cosas, el Plan de Ajuste de la Deuda además establece como requisito la presentación de una solicitud de gastos administrativos dentro del término de noventa (90) días desde la fecha de efectividad del citado Plan de Ajuste de Deuda. Específicamente, el inciso cuarenta y cuatro (44) del *Confirmation Order* estatuye lo que sigue:

44 Administrative Claim Bar Date:

The last day to file proof of Administrative Expense Claims shall be ninety (90) days after the Effective Date, after which date, any Administrative Expense Claim, proof of which has not been filed, shall be deemed forever barred, and the Debtors and Reorganized Debtors shall have no obligation with respect thereto; provided, however, that no proof of Administrative Expense Claim shall be required to be filed if such Administrative Expense Claim (a) shall have been incurred (i) in accordance with an order of the Court or (ii) with the written consent of the applicable Government Parties expressly granting such Administrative Expense Claim, (b) is a Professional Claim, (c) is an intergovernmental Claim, (d) is an Administrative Expense Claim of the IRS for the payment of taxes incurred by any of the Debtors during the period from and after the Commonwealth

Petition Date, the ERS Petition Date, or the PBA Petition Date, as applicable, (e) relates to actions occurring in the ordinary course during the period from and after the respective Debtor's petition date up to and including the Effective Date, (f) relates to a Claim that is subject to the provisions of the ACR Order, including, without limitation, "grievance claims" relating to any of the Debtor's collective bargaining agreements, or (g) is the subject of a pending motion seeking allowance of an administrative expense pursuant to section 503(b) of the Bankruptcy Code as of the entry of this Confirmation Order; and, provided, further, that any such proof of Administrative Expense Claim by a governmental unit shall remain subject to the rights and interests of the Debtors and Reorganized Debtors, as the case may be, and any other party in interest to interpose an objection or other defense to the allowance or payment thereof.

Igualmente, el Plan de Ajuste de la Deuda define las reclamaciones de gastos administrativos de la siguiente manera:

1.52 Administrative Expense Claim:

A Claim against the Debtors or their Assets constituting a cost or expense of administration of the Title III Cases asserted or authorized to be asserted, on or prior to the Administrative Claim Bar Date, in accordance with sections 503(b) and 507(a)(2) of the Bankruptcy Code arising during the period up to and including the Effective Date, and otherwise complying with applicable Puerto Rico law, including, without limitation, subject to the occurrence of the Effective Date, and except as provided in Section 3.5 hereof, Consummation Costs and PSA Restriction Fees; provided, however, that, under no circumstances shall an Administrative Expense Claim include the PBA Administrative Expense Claim.

### III.

### A. *KLAN202200729*

Expuesto el marco jurídico, procedemos a resolver la controversia que está ante nuestra consideración. En el recurso KLAN202200729, los señores Rivera-Colón alegan que el foro primario incidió al concluir que el *injunction* al amparo del *Confirmation Order* libera al ELA del presente pleito. Igualmente esbozan que no es aplicable la reclamación por gastos administrativos como un remedio alternativo. Los fundamentos

que dan origen a su contención surgen de diversas disposiciones del Código Federal de Quiebras y del Título III de PROMESA.

Habiendo evaluada minuciosamente el expediente ante nuestra consideración, determinamos que no les asiste la razón a los señores Rivera Colón. La normativa que rige la presente controversia surge de lo dispuesto en el *Confirmation Order*, la cual sustituye el estado de derecho provisto por el Título III de PROMESA. A esos efectos, al amparo del inciso cincuenta y nueve (59) dispuesto en el *Confirmation Order*, se implementa un *injunction* que **prohíbe, desde y a partir de la fecha de efectividad del Plan de Ajuste (15 de marzo de 2022), el comenzar o <u>continuar,</u> directa o indirectamente, cualquier acción u otro procedimiento sobre cualquier reclamación, deuda o responsabilidad de conformidad con el Plan de Ajuste de la Deuda.**

De igual manera, el aludido *injunction* incorpora elementos de la Sección 92.2 del Plan de Ajuste de la Deuda. La referida sección instituye que, los deudores y los deudores reorganizados se **considerarán liberados y descargados de todos y cada uno de los reclamos, causas de acción y cualquier otra deuda que surja, en su totalidad o en parte, antes de la fecha de efectividad o incluso antes de la fecha de petición.** Podemos colegir de lo anterior, que la orden del foro federal tuvo el efecto de descargar las reclamaciones que pesaban contra el ELA. Esto es así, pues "el proceso de descargue es uno de los beneficios que tiene el deudor que se somete al proceso de quiebras y le permite al deudor comenzar de nuevo su vida financiera". *Vera Gonzalez v. ELA, supra,* pág. 998.

En su recurso, los señores Rivera-Colón plantean que el *injunction* es aplicable únicamente a los casos que son descargados bajo el procedimiento de quiebras. No obstante, omite detallar que el inciso cincuenta y nueve (59) del *Confirmation Order* incorpora la ya reseñada Sección 92.2 del Plan de Ajuste el cual **descarga <u>todas</u> las reclamaciones que pesaban contra el ELA.**

No obstante, aquellos que hayan presentado una reclamación en estas circunstancias, el inciso cuarenta y cuatro (44) del precipitado *Confirmation Order* les provee un remedio en cuanto la otorgación de gastos administrativos. Para ello, la parte que los solicite debe reclamar dentro de un periodo de noventa (90) días a partir de la fecha de efectividad del Plan de Ajuste de la Deuda. Al igual que el *injunction* del inciso cincuenta y nueve (59), este remedio de otorgación de gastos administrativos es aplicable a esta controversia.

Finalmente, cabe señalar que el 28 de octubre de 2022, la Hon. Laura Taylor Swain emitió el *Notice of (a) entry of order confirming Modified Eighth Amended Title III Plan of Adjustment of the Commonwealth of Puerto Rico, et al. pursuant to Title III of PROMESA, (b) occurrence of the effective date, and (c) extension of administrative claim bar date for certain parties.* De la referida orden podemos destacar dos (2) elementos esenciales para la controversia ante nuestra consideración: la extensión de la fecha para reclamar gastos administrativos hasta el 18 de enero de 2023 y la inaplicabilidad del *injunction* del *Confirmation Order* a aquellos pleitos que se presenten dentro de las limitaciones estatutarias de la *Ley de Reclamaciones y Demandas contra el Estado,* Ley Núm. 104 de 29 de Junio de 1955, 32 LPRA sec.

3077(a), de setenta y cinco mil dólares ($75,000.00) o ciento cincuenta mil dólares ($150,000.00).[12] Nótese, que la aludida excepción no es aplicable a la reclamación incoada por los señores Rivera-Colón debido a que la misma asciende a una cantidad que excede los doscientos cincuenta mil dólares ($250,000.00).

En vista del análisis que antecede, resolvemos que tanto lo dispuesto en el inciso cuarenta y cuatro (44) y el inciso cincuenta y nueve (59) del *Confirmation Order* es aplicable al caso de epígrafe, por lo cual el error formulado por los señores Rivera-Colón no se cometió.

### B. KLAN202200636

Concluido lo anterior, nos corresponde examinar el argumento presentado por parte de Óptima y el Municipio de San Juan en el KLAN202200636. En este arguye que la paralización del pleito se debe extender al Municipio de San Juan bajo el fundamento de que el ELA es parte indispensable en el mismo. Veamos.

En el caso de autos, el foro *a quo* liberó y descargó al ELA de los reclamos, causa de acción y cualquier otra deuda que haya surgido contra este, en o antes del 15 de marzo de 2022, al amparo del Plan de Ajuste de la Deuda y el *Confirmation Order*. En consecuencia, ordenó la paralización de los procedimientos contra el ELA y el Departamento de Transportación y Obras Públicas. Cónsono con lo anterior, el descargue de las

---

[12] El lenguaje de la modificación del *injunction* lee como sigue:

> If you are party to a litigation, proceeding, or action asserting a claim pursuant to 32 LPRA sec 3077(a), to the extent the amount of such claim asserted is within such statutory limitation of $75,000 or $150,000, as applicable, the injunctions in Section 92.3 of the Plan and decretal paragraph 59 of the Confirmation Order have been modified to allow such litigation to proceed to final judgment and execution, including any appeals.

obligaciones afecta únicamente al deudor que se sometió al proceso de quiebras, el cual en este caso es el Estado Libre Asociado de Puerto Rico.[13] Es de notar, que el efecto del descargue y liberación de las deudas no incluye a los municipios ya que estos son entidades distintas y separadas del Gobierno de Puerto Rico, creadas por virtud del *Código Municipal de Puerto Rico*, Ley Núm. 107-2020, 21 LPRA secs. 7001, *et. seq.* **y por consiguiente no participan del proceso de quiebras dispuesto por la ley PROMESA.** Por lo tanto, siendo el Municipio de San Juan una entidad municipal no le son aplicables los efectos del Plan de Ajuste de la Deuda ni del *Confirmation Order*.

No empece lo anterior, en vista de que el ELA fue liberado de la reclamación de epígrafe, el reclamo que posee el Municipio de San Juan y Óptima referente a la jurisdicción del puente Dos Hermanos no puede atenderse, precisamente por el Estado estar ausente en el pleito. Dado que esta controversia jurisdiccional es fundamental para la continuación y posterior resolución de este pleito y al no poder resolverse quien es el responsable y titular del puente Dos Hermanos, procede extender la paralización de los procedimientos del resto de las partes bajo el fundamento de falta de parte indispensable.

**IV.**

Por los fundamentos expuestos a continuación determinamos lo siguiente: En cuanto al caso **KLAN202200636**, *modificamos* la sentencia apelada, y así modificada,

---

[13] Según surge del *Confirmation Order*, pág. 1, los deudores que presentaron el Plan de Ajuste de la Deuda son:

> The Commonwealth of Puerto Rico (the "Commonwealth"), the Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS"), and the Puerto Rico Public Buildings Authority ("PBA" and, collectively with the Commonwealth and ERS, the "Debtors"), by and through the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board").

confirmamos. En consecuencia, resolvemos que la paralización de los procedimientos debe extenderse a las demás partes que participan en esta controversia.

En cuanto al caso **KLAN202200729**, *confirmamos* el dictamen apelado.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones